IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SARAH SCOTINO, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Plaintiff, | ) |
| | ) Cause No.:    4:22-cv-01250 |
| vs. | ) |
| | ) |
| HUTTIG BUILDING PRODUCTS, INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Sarah Scotino, by and through her undersigned counsel, George B. Restovich and Cynthia L. Parnell of RESTOVICH & ASSOCIATES, LLC, and for her Complaint against Defendant, Huttig Building Products, Inc., states to the Court as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, Sarah Scotino ("Plaintiff"), is an individual residing in the City of St. Louis, State of Missouri, with capacity to contract, sue and be sued.

2. Defendant, Huttig Building Products, Inc., is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business located within the County of St. Louis, State of Missouri.

3. The incidents pleaded herein took place in St. Louis County, Missouri.

4. Plaintiff's injuries first occurred in St. Louis County, Missouri.

5. At all relevant times, Defendant was an "employer" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (the "Civil Rights Act").

6. At all relevant times, Defendant was an "employer" under the Missouri Human

1

Rights Act, Mo. Rev. Stat. § 213 *et seq.* (the "Missouri Human Rights Act").

7. At all relevant times, Plaintiff was an "employee" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

8. At all relevant times, Plaintiff was a "person" and a "complainant"" under the Missouri Human Rights Act, Mo. Rev. Stat. § 213 *et seq.*

9. The acts of discrimination, retaliation and sexual harassment as alleged herein commenced on or about September 23, 2021.

10. On or about January 18, 2022, Plaintiff filed a Charge of Discrimination regarding said acts with the United States Equal Opportunity Employment Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR").

11. On February 3, 2022, EEOC acknowledged filing of said complaint, numbered by the EEOC as Charge No. 560-2022-00924.

12. On February 4, 2022, MCHR acknowledged filing of EEOC Charge No. 560-2022-00924 and advised that the complaint would be investigated by EEOC.

13. On September 26, 2022, EEOC issued a right to sue letter with respect to Charge No. 560-2022-00924, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated herein by reference.

14. On October 28, 2022, MCHR issued a right to sue letter with respect to Charge No. 560-2022-00924, a true and correct copy of which is attached hereto as Exhibit 2 and incorporated herein by reference.

15. Plaintiff has exhausted all of her administrative remedies.

16. This Court has jurisdiction over this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Missouri Human Rights Act, Mo. Rev. Stat. § 213 *et*

*seq*.

## GENERAL ALLEGATIONS

17. Defendant is engaged in the business of wholesale distribution of millwork, building materials, and wood products used primarily in new residential construction and remodeling

18. In December 2008, Defendant hired Plaintiff as an administrative assistant in its Cape Girardeau branch.

19. In April 2010, Defendant promoted Plaintiff to National Account Support Manager.

20. In 2018, Defendant promoted Plaintiff to Product Manager, working in Defendant's St. Louis headquarters.

21. As Product Manager, Plaintiff's job duties included developing and implementing strategies related to the purchasing, pricing, marketing sales and management of products.

22. As part of her job duties, Plaintiff annually attended the Huttig Rewards Select Show held in Las Vegas, Nevada (the "Tradeshow").

23. While attending the Tradeshow on September 23, 2021, Plaintiff was approached by Wes Coffee ("Coffee"), at which time Coffee grabbed Plaintiff's arm and asked Plaintiff to come stay the night with him in his hotel room (the "Coffee Incident").

24. On or about September 24, 2021, Coffee apologized to Plaintiff for being "too drunk" the previous evening.

25. Prior to the Coffee Incident, Plaintiff had been subjected to numerous instances of sexual harassment during the course of her employment with Defendant, as follows:

   a. After relocating from the Cape Girardeau office to the St. Louis office, Vrabely asked Plaintiff if she still traveled to Cape Girardeau to have sex with her ex-husband and

3

stated that "some booty calls are worth the drive."

  b.  While staying at a hotel for a work event in 2013, Vrabely stated to Plaintiff that she could "come pass out with him anytime, I always like company, if you know what I mean."

  c.  While attending a social event in conjunction with a 2015 management meeting in Dallas, Defendant's employee, Tim Schneider, grabbed Plaintiff by the neck and attempted to kiss her.

  d.  Defendant's employee, Jon Douglas, warned Plaintiff not to report the above-described incident involving Schneider because she would get them both fired.

  e.  During a sales meeting in 2018, Defendant's northeast sales representative made romantic advances to Plaintiff and states that he "would love to report to [Plaintiff]."

26.  Plaintiff's job duties required her to have ongoing and regular contact with Coffee following the Coffee Incident.

27.  As a result of the pervasive sexual harassment culminating in the Coffee Incident, and the continuing requirement to interact with Coffee, Plaintiff developed severe distress and sought treatment with Joel Black, a therapist and licensed clinical social worker ("Black").

28.  Black diagnosed Plaintiff with post-traumatic stress disorder ("PTSD") arising out of the Coffee Incident.

29.  On or about October 11, 2021, on the advice of Black, Plaintiff applied for leave under the Family Medical and Leave Act ("FMLA") in order to complete PTSD treatment.

30.  While waiting for FMLA leave approval, Plaintiff utilized all of her allotted vacation time during the period of October 11, 2021 through October 24, 2021.

31.  On or about October 12, 2021, Plaintiff reported the Coffee Incident to Rebecca Kujawa, Defendant's Senior Vice President and General Counsel.

32. Defendant advised Plaintiff that it would conduct an investigation of the Coffee Incident.

33. During the investigation, Defendant confronted Mr. Coffee, and Coffee stated that he could not recall the Coffee Incident.

34. On or about October 20, 2021, Defendant, by and through John Short, its Vice President of Human Resources, delivered a letter to Plaintiff outlining the results of its investigation of the Coffee Incident, a true and correct copy of which is attached hereto as Exhibit 3 and incorporated herein by reference (the "October 20 Letter").

35. The October 20 Letter states as follows:

> Thank you for reporting the recent unfortunate incident that you described as having happened at the September Huttig Rewards Show. I have concluded the investigation and, based on the findings, appropriate action has been taken. We now consider this matter closed.
>
> I appreciate that you chose to bring this matter to the Company's attention. Huttig strives to maintain a comfortable and safe workplace for all employees, and achieving that goal depends greatly on employees' willingness to report to the Company when an uncomfortable experience has occurred. Consistent with our efforts to address the matter you brought forward, we have implemented a no-contact rule between Wes Coffee and you, which means that there should be no direct communication or interaction between the two of you. To the extent any legitimate business need arises for communication directly between the two of you, that communication should be routed through a supervisor (Bernie Ferrari or Steve Esham) rather than through direct engagement between Mr. Coffee and you.
>
> To protect your privacy we have kept the matters involved in the investigation completely confidential including with respect to Bernie and Steve, however, they are aware of the no contact rule between you and Mr. Coffee. While we have made clear our expectations regarding communication, in the event that anyone other than Rebecca Kujawa or I reach out to you to discuss this incident, you should decline to comment and immediately contact one of us.
>
> I am sure Bernie is eager to get you back to work as soon as you feel ready, so please keep us informed of your status. Please call me at any time of you have any additional questions.

36. Communication with Coffee was an integral part of Plaintiff's job performance in that Coffee was Plaintiff's primary point of contact with regard to her top product line and, therefore, the no-contact order impaired Plaintiff's ability to perform her job duties.

37. In addition, the no-contact order adversely affected Plaintiff's standing and reputation in the company because the no-contact order was reported to her supervisors, but the

5

basis for the no-contact order was not disclosed, creating a false impression that the no-contact order related to wrongful conduct by Plaintiff.

38. As a result of Defendant's response to the Coffee Incident, which punished Plaintiff instead of her harasser, Plaintiff experienced severe anxiety and ongoing PTSD.

39. At the time Plaintiff's allowed FMLA leave expired on January 12, 2022, Black continued to advise Plaintiff against returning to work due to continuing anxiety and PTSD.

40. In addition to FMLA leave, Plaintiff was approved for short-term disability from October 25, 2021 through January 12, 2022.  During said period, Plaintiff received sixty percent (60%) of her annual base salary of $1,562.50 per week.

41. Plaintiff applied for continuation of short-term disability beginning at the expiration of FMLA leave on January 13, 2022.

42. In connection therewith, Plaintiff submitted documentation from Black and Plaintiff's primary care physician, Dr. Jaime Santos, that Plaintiff was unable to return to work on January 13, 2022 due to anxiety and PTSD.  Despite said documentation, Plaintiff's short-term disability application was denied.

43. Based upon Black's recommendation, Plaintiff did not return to work upon expiration of FMLA leave and short-term disability on January 13, 2022.

44. Plaintiff did not receive any salary or other payment from or on behalf of Defendant following January 12, 2022.

45. The resulting financial hardship, in addition to Defendant's complete disregard of harmful sexual harassment in its workplace, caused additional exacerbation of Plaintiff's anxiety and PTSD.

46. As a result, Plaintiff developed heavy tooth grinding, severe enough to cause

chipping of her front teeth on or about February 10, 2022, as reflected in correspondence to Defendant from Daniel Charpentier, D.D.S to Defendant, a true and correct copy of which is attached hereto as <u>Exhibit 4</u> and incorporated herein by reference.

47. Immediately thereafter, on or about February 12, 2022, via correspondence attached hereto as <u>Exhibit 5</u> and incorporated herein by reference (the "February 12 Letter"), Defendant advised Plaintiff that she must return to work on or before March 1, 2022.

48. The February 12, 2022 Letter further advised Plaintiff that investigation of her report of other incidents of harassment, described more fully above, could not be substantiated due to the passage of time and no further action would be taken in connection therewith.

49. On March 1, 2022, Plaintiff remained under the care of Black and Dr. Santos for treatment of her anxiety and PTSD, and Black continued to advise Plaintiff against returning to work for Defendant.

50. On or about March 2, 2022, Defendant advised Plaintiff that her position would no longer be held open and she would be terminated at the time Defendant hired someone else to fill her position.

51. Plaintiff's mental health care providers continued to advise Plaintiff against returning to work for Defendant until further action was taken against the individuals who sexually harassed Plaintiff.

52. Plaintiff advised Defendant that she still felt unsafe returning to work and that her therapist advised against returning to work for Defendant until appropriate action was taken against the individuals who sexually harassed her, but Defendant refused to take any further action.

53. As a result of Plaintiff's mental health provider recommendations and the hostile work environment created by Defendant, Plaintiff resigned her position with Defendant on July

7

11, 2022.

## COUNT I – SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

54. Plaintiff restates and incorporates by reference Paragraphs 1 through 53, above, as if fully set forth herein.

55. Plaintiff is a female and is a member of a category of persons protected from discrimination based upon the Civil Rights Act.

56. Plaintiff is protected from sexual harassment under the Civil Rights Act.

57. Plaintiff's rejection of sexual advances and other conduct of a sexual nature by male employees of Defendant, as described above, was used as a basis for employment decisions affecting Plaintiff.

58. The conduct of a sexual nature by male employees of Defendant, as described above, unreasonably interfered with Plaintiff's work performance.

59. The conduct of a sexual nature by male employees of Defendant, as described above, created a hostile working environment.

60. Plaintiff's sex was a motivating and contributing factor in the adverse employment actions taken by Defendant.

61. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits of employment and is reasonably certain to sustain additional lost wages and benefits of employment in the future.

62. As a further result of Defendant's unlawful conduct, Plaintiff has suffered emotional distress and the expenses associated with medical treatment for said distress, embarrassment, mental anguish and suffering and loss of enjoyment of life.

63. Plaintiff has incurred and will continue to incur attorney fees as a result of

Defendant's unlawful conduct.  Pursuant to the Civil Rights Act, Plaintiff is entitled to an award of her attorney fees incurred in connection with this action.

WHEREFORE, Plaintiff, Sarah Scotino, prays for judgment in her favor and against Defendant, Huttig Building Products, Inc., on Count I of her Complaint in a fair and reasonable sum in excess of $75,000.00, together with interest at the legal rate, for her costs and attorney fees, and for such other and further relief as the Court shall deem just and proper.

## COUNT II – SEX DISCRIMINATION IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT

64. Plaintiff restates and incorporates by reference Paragraphs 1 through 63, above, as if fully set forth herein.

65. Plaintiff is a female and is a member of a category of persons protected from discrimination based upon the Missouri Human Rights Act.

66. The conduct of Defendant as described above falls within the meaning of "discrimination" under the Missouri Human Rights Act.

67. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits of employment and is reasonably certain to sustain additional lost wages and benefits of employment in the future.

68. As a further result of Defendant's unlawful conduct, Plaintiff has suffered emotional distress and the expenses associated with medical treatment for said distress, embarrassment, mental anguish and suffering and loss of enjoyment of life.

69. Plaintiff has incurred and will continue to incur attorney fees as a result of Defendant's unlawful conduct.  Pursuant to the Missouri Human Rights Act, Plaintiff is entitled to an award of her attorney fees incurred in connection with this action.

WHEREFORE, Plaintiff, Sarah Scotino, prays for judgment in her favor and against

Defendant, Huttig Building Products, Inc., on Count II of her Complaint in a fair and reasonable sum in excess of $75,000.00, together with interest at the legal rate, for her costs and attorney fees, and for such other and further relief as the Court shall deem just and proper.

## JURY TRIAL DEMAND

PLAINTIFF DEMANDS TRIAL BY JURY ON CLAIMS TRIABLE TO A JURY.

Respectfully submitted,

RESTOVICH & ASSOCIATES, LLC


By: /s/George B. Restovich_____
George B. Restovich, #49639MO
Cynthia L. Parnell, #61280MO
214 N. Clay Avenue, Suite 100
Kirkwood, MO 63122
314.434-7700 – telephone
314.480-3355 – facsimile
george@restovichlawstl.com
cindy@restovichlawstl.com
*Attorneys for Plaintiff*